# LAMBERT LARSON v. JOHN SVENTEK AND ANOTHER.[1]

December 19, 1941.

No. 32,659.

[1]Reported in 1 N. W. (2d) 608.

*Abbott, MacPherran, Dancer & Zuger,* for appellants.

*Lewis, Grannis & Underhill* and *Henry Paull,* for respondent.

GALLAGHER, CHIEF JUSTICE.

In a suit for personal injury the defendants pleaded a release, which plaintiff sought to avoid on account of injuries unknown to either party at the time of its execution. The question whether the release should be avoided on that ground was, together with the other issues in the case, submitted to the jury, which found for defendants. The trial court granted a new trial for error in its charge.

■ In modifying one of plaintiff's requests for instructions, the court charged the jury with reference to the release as follows:

"With reference to the settlement and release which was entered into between plaintiff and defendants, you are instructed that if the plaintiff has proved by evidence which is clear and convincing that said settlement was made and the release was entered into with reference to injuries then known, and that it subsequently developed that a substantial injury then existed which was unknown to the parties, *and* a known injury at the time the release was signed subsequently developed unexpected consequences, neither of which were taken into consideration by the parties when said settlement was agreed upon, and that plaintiff did not intend to release claims for any unknown injuries, or for any known injury at the time the release was signed which subsequently developed unexpected consequences, then the release may be avoided on the ground of mutual mistake; but the burden is upon the plaintiff to prove such facts by evidence which is clear and convincing." (Italics supplied.)

Preceding this statement in the charge, the court had said that the plaintiff sought to avoid the release because both parties were mutually mistaken as to the real nature and character of the injuries sustained, as to plaintiff's condition at the time he signed the release, and that "they had no knowledge of any other in-

juries or injurious effects which the plaintiff had sustained." Later in the charge the court said:

"If you find from the evidence that the present disability of the plaintiff in this case is a consequence of injuries which were known to the plaintiff at the time of the execution of the release on March 1, then the plaintiff cannot recover."

This last statement of the law is conceded to be correct.

It is quite obvious that the trial court when it commenced to give the jury the law on the subject was under the erroneous impression that the plaintiff might avoid the release not only on the ground of unknown injuries, but also on the ground of unexpected consequences of known injuries. Plaintiff concedes that the latter ground is insufficient to justify avoidance of the release and that the charge, if it justified avoidance on either ground, was more favorable to the plaintiff than he was entitled to. What plaintiff contends is that the charge, read literally, required both grounds to be present in order to justify avoidance of the release.

If the trial court had denied the motion for a new trial on the ground that the use of the word "and" instead of "or" was an obvious inadvertence under the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754, we should have been inclined to affirm. But, as we said in Mingo v. Extrand, 180 Minn. 395, 399, 230 N. W. 895, a different situation is presented where a new trial has been granted because the trial court deems the error prejudicial and ground for a new trial. Under such circumstances, we will not reverse in the absence of a clear showing of error or abuse of discretion. As we said in that case, the granting of such a motion is largely a matter of sound judicial discretion, the trial court being in a better position than we are to determine whether the error in the charge was prejudicial. See cases cited on p. 399 in Mingo v. Extrand.

■ Defendants contend that the evidence is insufficient to establish that the injuries for which recovery is here sought were the proximate result of the collision for which they admit responsibil-

ity. A careful examination of the expert testimony discloses sufficient evidence, in our opinion, to make this a question for the jury.

■ Defendants further contend that the injury to plaintiff's brain was the unexpected consequence of a known injury and that therefore the release is binding under the rule of Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643. The doctor's report on which the parties acted at the time of the execution of the release did not disclose any head or brain injuries, and on the evidence we think that a finding might be sustained that the release was executed in mutual mistake and in ignorance by both parties of any injury to head or brain.

■ Finally, it is urged that defendants are entitled to judgment as a matter of law on the ground that the release expressly covered unknown injuries. The release in terms discharged the defendants "of and from all claims, demands, damages, actions or causes of action, on account of injuries resulting, or to result, from an accident to my person * * * and of and from all claims or demands whatsoever in law or equity, which I, my heirs, executors, administrators or assigns can, shall or may have by reason of any matter, cause or thing whatsoever * * *" Unknown injuries are not expressly referred to in the release; but even if the release be construed as covering unknown injuries, that alone does not entitle defendants to judgment as a matter of law. The rule applied in Minnesota is that a release is incontestable only when the parties expressly and intentionally settle for unknown injuries and that therefore it is ordinarily a fact question for the jury whether the parties fixed the consideration by, and assumed as a basis for the release, known injuries, or whether they intended to compromise claims for all injuries, known or unknown. Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. The two situations are often hard to distinguish; but if the circumstances are such that, despite the wording of the release, the

parties cannot be said to have contracted with reference to unknown injuries, and a material, unknown injury subsequently develops, mutual mistake exists and parol evidence may be introduced to show it. The same result in general has been reached by the great majority of courts elsewhere. 13 Minn. L. Rev. 392, 393; see extensive annotation in 48 A. L. R. 1462, especially at 1467; McIsaac v. McMurray, 77 N. H. 466, 93 A. 115, L. R. A. 1916B, 769; Simpson v. Omaha & C. B. St. Ry. Co. 107 Neb. 779, 186 N. W. 1001. Plaintiff suffered a serious brain injury unknown to either party at the time of the release. The consideration was fixed on the basis of the known injuries. We have examined the evidence and are of the opinion that there was enough to go to the jury on the question of mutual mistake.

The order appealed from is affirmed.

Stone, Justice (dissenting).

It may be that because of the theory of trial there was both error and prejudice. About the latter I have great doubt, but my failure to agree is put upon a broader ground, which, if sound, makes it unnecessary to consider any other point.

The release, a contract wherein the parties deliberately, and concededly without fraud. or misrepresentation, obligated themselves concerning both the known and the unknown, covered all plaintiff's injuries "resulting, or *to result,* from" the accident and acquitted defendants "from all claims or demands whatsoever in law or equity, which I [plaintiff], my heirs, executors, administrators or assigns can, shall or *may have."* (Emphasis supplied.) That, it may be repeated, includes unknown as well as known effects of the injury as plainly as language can. Even in Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 113, 179 N. W. 642, 644, it is recognized that "when parties intentionally settle for unknown injuries * * * the release obtained is incontestable."

True, there was mutual ignorance of injury to the brain, if there was one, but there was neither mutual ignorance of tenor of the release nor any deception perpetrated upon plaintiff in-

ducing him to sign without reading. He could read, and he testified that it was his custom to read documents before he signed them. He denied that he read this release and when asked why he didn't read it he said:

"Because I didn't want to sign those documents.

Q. "Why didn't you want to sign them?

A. "Because I didn't know how I was going to turn out afterwards."

So plaintiff realized that so far as these defendants were concerned he was settling for future disability. From the record it appears that everything was open and aboveboard at the conference at which the release was signed. The representative of the streetcar company was there, and it was in his interest to obtain as large a settlement for plaintiff as he could in order to protect his company because of its possible liability for future disability arising out of the accident.

The result was that plaintiff received the exact amount he had asked for. On that showing and under the authorities, I fail to see how the release can be set aside. If one who has the ability and the opportunity to read a written contract which he is about to enter into fails to do so, he is bound by it in the absence of misrepresentation, trick, or artifice inducing him to sign without reading. Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600; Central Met. Bank v. Chippewa County State Bank, 160 Minn. 129, 199 N. W. 901; Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155; Sorenson v. New York L. Ins. Co. 195 Minn. 298, 300, 262 N. W. 868. In the case at bar plaintiff appeared to realize that the release was a final disposition of his claim against these defendants and covered future developments no matter how he "was going to turn out afterwards."

Quite inadvertently, this decision applies to releases from liability for personal injuries a rule we do not apply in similar cases arising from other torts or breach of contract. Thereby is being created an exception which in reason has no basis. The

error results from failure to appreciate that a release is a contract, in the making of which the parties exercise unlimited contractual competence.

Suppose that a contractor has just completed for the owner a large building and that a portion of the contract is unpaid. Suppose also that due to a breach of the contract by the contractor a serious defect develops, in consequence of which the owner refuses to pay the balance. In such case, there may well be a compromise, and the contractor, wanting to fend off all claims for further defects, insists upon a release not only for the known defect, but also for others, if any, which are unknown. If he gets such a release, can it be avoided afterward by the owner when other defects develop which were unknown when the compromise was made? Of course not. Yet that, not only in substance but also in its legal incidents, is precisely the instant situation, in which we are nullifying a release explicitly discharging from further liability "on account of injuries resulting, or to result" and, by way of repetition, "from all claims or demands whatsoever" which the releasor "can, shall or may have."

No apology is made here for the repetition of the substance of the futile dissent in Mix v. Downing, 176 Minn. 156, 222 N. W. 913. Neither is it denied that there are many cases, some of which are cited by the majority, which in result lend support to the decision. It is respectfully submitted that there is no occasion to analyze them until someone at least makes an effort, by resort to the reason of the problem, to show that the usual principles and controls of contract law are for some reason, so far unexplained, inapplicable.

For the reason indicated, my respectful submission is that plaintiff's attack on the release should fail as matter of law and that the court should have denied the motion for new trial and proceeded to judgment for defendant.

LORING and JULIUS J. OLSON, JUSTICES (dissenting).
We concur in the dissent of Mr. Justice Stone.