BENJAMIN L. JEFFRIES v. SYLVESTER R. GILLITZER.

225 N. W. 2d 17.

January 3, 1975—No. 44562.

*Castor, Ditzler & Klukas* and *Austin D. Ditzler,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Robert M. Frisbee,* and *James F. Roegge,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

In this action plaintiff seeks to set aside a personal injury re-

lease and recover damages arising out of an automobile accident. The jury returned a verdict for plaintiff, and defendant was granted judgment notwithstanding the verdict. We affirm.

The dispute herein arises out of an automobile accident which occurred on October 15, 1962. Plaintiff, Benjamin L. Jeffries, was at that time 33 years of age; he possessed an eighth-grade education. On the day following the accident, plaintiff saw Dr. W. D. Brown with reference to complaints of severe pain in his neck, back, and right arm. Plaintiff was referred to, and examined by, orthopedic physicians and subsequently returned to Dr. Brown for therapy.

In March 1963 plaintiff entered Fairview Hospital with complaints of severe pain in the neck, elbow, and back. A myelogram was then administered, which indicated a nerve root problem in plaintiff's back. Plaintiff was later examined by additional orthopedic surgeons and by a team of psychiatrists. Plaintiff continued to receive medical care after the hospitalization.

Some time after the accident plaintiff retained the legal counsel of James C. Cottingham, who was deceased at the time of trial. Plaintiff's medical reports were provided to Cottingham.

On November 12, 1964, 25 months post-accident, plaintiff executed a general release. The release was of all claims, applying "to all known and unknown and anticipated and unanticipated injuries and damages resulting from said accident." Plaintiff read the release and understood he would have no further recourse against defendant or his insurer. At the time he signed the release, plaintiff's neck, right arm, and low back still troubled him. Plaintiff agreed to accept $5,000 in settlement upon the advice of his attorney that the trend of jury verdicts for such injuries was $6,000, and with his unexpressed understanding that he would "work out" of his injuries.

In October 1972, 10 years after the accident, plaintiff was examined by Dr. Robert Wengler, the only physician who testified at the time of trial. Plaintiff's complaints at that time were of persistent neck and back pain radiating into the right extremi-

ties, loss of strength in the right arm, and problems in bending, lifting, or stooping. Dr. Wengler diagnosed plaintiff's condition as "manifestations of soft tissue injuries of the neck and to the back, either in the form of damage to the supporting ligaments of the spine or else to the intervertebral disc structures themselves."

Plaintiff thereafter commenced this action for damages in Hennepin County District Court. Defendant, Sylvester Gillitzer, did not contest liability for the injury but alleged the prior settlement as an affirmative defense. Plaintiff sought to avoid the release on the grounds of mutual mistake, i.e., that plaintiff had sustained unknown injuries not within the contemplation of the parties when the release was signed. The jury returned a verdict for plaintiff in the amount of $14,000. Defendant moved for judgment notwithstanding the verdict or a new trial. The trial judge granted defendant's motion for judgment notwithstanding the verdict and plaintiff appeals.

We have dealt with the propriety of setting aside personal injury releases on several occasions. It is clear that an unknown and unexpected consequence that results from an injury that is known at the time of executing the release is not a sufficient basis for avoiding the release. If there is to be avoidance of a release on the ground of mutual mistake, there must be unknown injuries that were in existence and were not within the contemplation of the parties when the settlement was agreed upon. Schmidt v. Smith, 299 Minn. 103, 216 N. W. 2d 669 (1974) ; Newman v. Fjelstad, 271 Minn. 514, 137 N. W. 2d 181 (1965) ; Doud v. Minneapolis St. Ry. Co. 259 Minn. 341, 107 N. W. 2d 521 (1961); Mix v. Downing, 176 Minn. 156, 222 N. W. 913 (1929). See, generally, Annotation, 71 A. L. R. 2d 82.

Thus, if the injury complained of is an unknown consequence of a known injury, then the release is binding. If, on the other hand, the injury is found to be an unknown and uncontemplated injury, then a second question must be resolved, namely, whether the parties intended to make the release final as to all claims for

both known *and* unknown injuries. This inquiry must, of course, look beyond the language of the release itself. If the parties are found to have intended the release to be final as to unknown as well as known injuries, then the release will be held binding. If, on the other hand, there was no such intention, a release may be set aside by reason of mutual mistake, notwithstanding the boilerplate language of the release itself. Schmidt v. Smith, *supra*; Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642 (1936); Aronovitch v. Levy, 238 Minn. 237, 56 N. W. 2d 570, 34 A. L. R. 2d 1306 (1953).

In Aronovitch, we summarized the law as follows:

"We perceive the rule in this state to be that, where the parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time of contracting for such release. Further that, even though a release expressly covers unknown injuries, it is not a bar to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended [the] release to cover unknown injuries is usually a question of fact." 238 Minn. 246, 56 N. W. 2d 576, 34 A. L. R. 2d 1313.

In the case at bar we do not feel it necessary to determine whether the injuries complained of by plaintiff were previously unknown injuries or are merely new consequences of known injuries. It is, rather, the second consideration—whether the parties intended the release to cover both known and unknown injuries—that is dispositive here.

In Schmidt v. Smith, *supra,* we affirmed a lower court's granting of summary judgment to the defendants in a similar factual situation. The court there addressed itself to the issue of whether

the parties intended the release to cover both known and unknown injuries, and stated:

"While this court in proper cases continues to recognize and protect the right of a releasor to avoid the release of a claim for unknown injury when such release was not intended, it has also recognized that the evidence as to finality can be conclusive when the release is executed under circumstances evincing basic fairness and both releasor and releasee clearly indicate in the instrument an intent to release all claims for both known and unknown injury. Among factors to be considered in determining the validity and extent of a release are the following: (a) The length of period between the injury and the settlement; (b) the amount of time elapsed between the settlement and the attempt to avoid the settlement; (c) the presence or absence of independent medical advice of plaintiff's own choice before and at the time of the settlement (Hanson v. Northern States Power Co. 198 Minn. 24, 268 N.W. 642 [1936]; Page v. Means, 192 F. Supp. 475 [N. D. W. Va. 1961]); (d) the presence or absence of legal counsel of plaintiff's own choice before and at the time of the settlement (Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. 2d 560 [1962]; Viskovich v. Walsh-Fuller-Slattery, 16 App. Div. 2d 67, 225 N. Y. S. 2d 100 [1962] affirmed, 13 N. Y. 2d 1100, 246 N. Y. S. 2d 632, 196 N. E. 2d 267[1963]); (e) the language of the release itself (Hanson v. Northern States Power Co. *supra*); (f) the adequacy of consideration (Dansby v. Buck, 92 Ariz. 1, 373 P. 2d 1 [1962]; Denton v. Utley, 350 Mich. 332, 86 N. W. 2d 537 [1957]; Clancy v. Pacenti, 15 Ill. App. 2d 171, 145 N. E. 2d 802, 71 A. L. R. 2d 77 [1957]); (g) the competence of the releasor; and (h) whether the injury complained of by the releasor was an unknown injury at the time of the signing of the release or merely a consequence flowing from a known injury." 299 Minn. 109, 216 N. W. 2d 673.

Applying the factors outlined in Schmidt to the facts before us, it is clear that the defendant was entitled to judgment not-

withstanding the verdict. Like Schmidt, this case is one in which the terms of the release, along with the circumstances surrounding its execution, make the intended finality of the release of all claims for known and unknown injuries so apparent that defendant is entitled to judgment as a matter of law. When parties intend that their differences be terminated, the law must provide them with complete assurance that the matter is final.

Affirmed.