Steven Wade FEICK, a minor child by Robert E. Feick, his father and natural guardian, Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

No. 51540.

Supreme Court of Minnesota.

July 10, 1981.

---

Lommen, Nelson, Sullivan & Cole and Wells H. Anderson, Minneapolis, for appellant.

Delaney & Thompson and Robert Bennett, Minneapolis, for respondent.

AMDAHL, Justice.

Defendant State Farm Mutual Automobile Insurance Company appeals from an order denying its motion for summary judgment and granting summary judgment in favor of plaintiff Steven Feick. We reverse.

There are no disputed facts. On June 4, 1979, the minor plaintiff was injured in a collision between the bicycle he was riding and a motorcycle owned and driven by Bradley Hughes.[1] At the time of the accident, plaintiff was an insured under policies issued by defendant covering four vehicles owned by plaintiff's father. Plaintiff made a claim for basic economic loss benefits[2] under each of the subject policies to the extent of his damages. When defendant denied coverage, plaintiff instituted this action for declaratory judgment seeking a determination that he was entitled to basic economic loss benefits pursuant to the provisions of the "Minnesota No-Fault Automobile Insurance Act," Minn.Stat. §§ 65B.41–.71 (1980) (No-Fault Act).

The parties brought cross motions for summary judgment. The district court granted plaintiff's motion and denied defendant's motion. Defendant appeals from that order.

The narrow issue presented by this appeal is whether a motorcycle is a "motor vehicle" under section 65B.46, subd. 1 for purposes of entitling a bicyclist injured in a collision with a motorcycle to basic economic loss benefits.[3]

The general right to the benefits claimed by plaintiff is stated in section 65B.46, subd. 1:

If the accident causing injury occurs in this state, every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic economic loss benefits.

The statutory definition of motor vehicle[4]

---

1. Bradley Hughes is not a party to this action. The motorcycle was insured in accordance with Minn.Stat. § 65B.48, subd. 5 (1980). Plaintiff's claim against Mr. Hughes was settled for the full amount of the policy limits on the motorcycle.

2. Basic economic loss benefits provide "reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle" and cover medical expense loss, income loss, replacement services loss, funeral expense loss, survivors' economic loss and survivors' replacement service loss. Id. § 65B.44, subd. 1.

3. Plaintiff argues that to construe the No-Fault Act as not requiring coverage in this case would leave the Act subject to attack on constitutional grounds. However, plaintiff has not

made a direct challenge to the constitutionality of the Act nor notified the Attorney General, as required by Minn.R.Civ.App.P. 144, that he intended to do so on this appeal.

4. The relevant provisions of the policies in question are substantially similar to, and no broader than, those contained in the No-Fault Act. Under Section II of each policy, it is provided:

We will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured*, caused by accident resulting from the maintenance of a *motor vehicle* as a vehicle:

 * * * * * *

*Motor Vehicle*—means a self-propelled vehicle:

1. required to be registered by Chapter 168 of the Minnesota Statutes; and

is set forth in section 65B.43 which provides in part:

Subdivision 1. The following words and phrases, shall, for the purpose of sections 65B.41 to 65B.71, have the meanings ascribed to them, *except where the context clearly indicates a different meaning.*

Subdivision 2. "Motor vehicle" means every vehicle, *other than a motorcycle* or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, or (c) is a trailer, when connected to or being towed by a motor vehicle.

(Emphasis added).

Under both the subject policies and the No-Fault Act, basic economic loss benefits are recoverable only when the injury arises out of the "maintenance or use of a motor vehicle." Minn.Stat. § 65B.46, subd. 1 (1980). The Legislature precisely defined "motor vehicle" in section 65B.43, subd. 2 and expressly excluded motorcycle from that definition. The statutory definition applies throughout the No-Fault Act unless "the context clearly indicates a different meaning." *Id.* § 65B.43, subd. 1. We are not persuaded that the context of the term indicates that a different meaning of motor vehicle should apply with regard to basic economic loss coverage in this case.

One of the statutory limitations on the right to receive basic economic loss benefits is provided in section 65B.46, subd. 3: [5]

For the purposes of sections 65B.41 to 65B.71, injuries suffered by a person while on, mounting or alighting from a motorcycle do not arise out of the maintenance or use of a motor vehicle although a motor vehicle is involved in the accident causing the injury.

2. designed for use on public highways; and
3. which has more than three wheels.
It includes an attached trailer.

5. The analagous provisions of the subject policies provide:

Plaintiff asserts that the above section clearly indicates the intent of the Legislature to exclude motorcycle drivers and their passengers from basic economic loss protection and that the limitation on recovery of benefits is restricted to persons within that excluded class. At the very least, plaintiff argues that section 65B.46, subd. 3 makes the scope of the motorcycle exclusion under section 65B.43, subd. 2 ambiguous and that because of the ambiguity, it is appropriate for this court to determine legislative intent by examining the legislative history and purpose underlying that exclusion. The history and purpose of the motorcycle exclusion, it is claimed, indicates that the Legislature never intended to deny first party basic economic loss protection to pedestrians injured by motorcycles.

Despite the assertions of plaintiff, we do not find an ambiguity exists by reason of a purported conflict between the general provision of section 65B.46, subd. 1 and the specific preclusion set forth in subdivision 3 of that section. There is no such conflict. Subdivision 1 provides that a broad class of persons injured in accidents involving motor vehicles is entitled to basic economic loss benefits. Under this section, virtually all persons whether pedestrians, bicyclists or motorcyclists, would be able to recover such benefits so long as a "motor vehicle" as defined by section 65B.43, subd. 2 is involved in the accident causing the injury. However, if such persons are injured in accidents which do not involve a "motor vehicle" within the statutory definition, no recovery is authorized.

This broad class of injured persons is reduced by special provisions excluding recovery if the injured person converts a motor vehicle, *id.* § 65B.58, sustains injury in the course of official racing contests, *id.* § 65B.59, or intends to cause injury to himself or another, *id.* § 65B.60, although a motor vehicle as defined by section 65B.43,

There is no coverage * * * for any *person* who suffers *bodily injury* while * * * *occupying* a self-propelled vehicle having: (1) fewer than four wheels, and (2) an engine rating over five horsepower.
(Original emphasis).

subd. 2 is involved in the accident. Subdivision 3 of section 65B.46 is a special exclusion which applies to all provisions of the No-Fault Act. With regard to basic economic loss benefits, that section prevents a passenger or driver of a motorcycle from recovering these benefits even though he is struck by a motor vehicle as defined by statute. But for subdivision 3, it is apparent that a motorcyclist struck by an automobile would be entitled to basic economic loss benefits.

██ In the absence of any ambiguity in the express language of a legislative enactment, we are not permitted to resort to extrinsic aids to determine legislative intent. "Extrinsic aids may be used to solve ambiguities which exist but cannot be used to create them." *Minneapolis-St. Paul Sanitary District v. City of St. Paul*, 240 Minn. 434, 437, 61 N.W.2d 533, 536 (1953). In *Kealy v. St. Paul Housing and Redevelopment Authority*, 303 N.W.2d 468 (Minn. 1981), we again followed the well-established rule of statutory construction that "[w]hen the words of a law * * * are clear from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1980). In such circumstances, judicial construction is unnecessary and improper.[6]

Plaintiff was injured in a collision between his bicycle and a motorcycle. Since no "motor vehicle" as defined by the No-Fault Act or the policy was involved, plaintiff is not entitled to payment of basic economic loss benefits.[7] *See Shoemaker v. National Ben Franklin of Michigan*, 71 Mich.App. 175, 259 N.W.2d 414 (1977). Plaintiff's proposed construction flies in the face of the plain language of the statute. Our statements in *Kealy* apply with equal force to the case at bar: "It is not for us to rewrite a statute that has no ambiguities; that is for the legislature, and we call its attention to that fact, should this opinion not reflect its intent." 303 N.W.2d at 474.

We reverse the district court and direct that the judgment in favor of plaintiff be vacated and that judgment be entered in favor of defendant.[8]

6. Plaintiff's reliance on *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813 (Minn. 1979) is misplaced. In that case, we referred to the legislature's clarifying amendment to the definition of *uninsured motor vehicle*, Act of May 25, 1977, ch. 266, § 2, 1977 Minn. Laws 437, 438 (current version at Minn.Stat. § 65B.49, subd. 4(3) (1980) in concluding that the general statutory definition contained in section 65B.43, subd. 2 was inapplicable. Thus, a passenger of a motorcycle is not precluded from recovering *uninsured motorist benefits* in an accident involving an uninsured motorcycle. There is no similar ambiguity or conflict presented with regard to entitlement to basic economic loss benefits.

7. The cases cited by plaintiff are inapposite because in each case an automobile was involved in the accident, thereby entitling the injured party to first party personal injury protection benefits. *Piersante v. American Fidelity Fire Insurance Co.*, 88 Mich.App. 607, 278 N.W.2d 691 (1979); *Esquivel v. American Fidelity Fire Insurance Co.*, 90 Mich.App. 56, 282 N.W.2d 240 (1979); *Esler v. United Services Automobile Association*, 273 S.C. 259, 255 S.E.2d 676 (1979).

8. Although basic economic loss benefits are unavailable to pedestrians struck by motorcycles, we note that persons so injured are not subject to the No-Fault threshold requirements of section 65B.51, subd. 3 in a negligence action against the driver of the motorcycle. Thus, while on the one hand, recoverable benefits under the No-Fault Act are more restrictive in these cases, there is no requirement that the No-Fault statutory conditions be met before a negligence action may be maintained.