Kenneth Cornelius
OSTERDYKE, Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Petitioner, Appellant.

No. C6–87–365.

Supreme Court of Minnesota.

March 25, 1988.

Robert E. Salmon, Minneapolis, for petitioner, appellant.

Douglas E. Schmidt, Minneapolis, for respondent.

POPOVICH, Justice.

This is an appeal from a decision of the court of appeals holding that underinsured motorist coverage, imposed by operation of law due to the insurer's failure to make a mandatory offer of such coverage pursuant to Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980), was available in an amount equal to the insured's residual liability limits where such limits were greater than the minimum liability coverage required by statute. We affirm.

### I.

On March 16, 1979, Kenneth Osterdyke was severely injured when the vehicle he was driving collided with another vehicle. The other driver maintained liability insurance of $25,000 per person, which was tendered to and accepted by Osterdyke. The parties stipulated that Osterdyke's damages as a result of the accident exceeded $150,000. Osterdyke then sued his own insurer, State Farm Mutual Automobile Insurance Company (State Farm), alleging State Farm had failed to offer underinsured motorist coverage as required by Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980). The trial court found State Farm had made a proper offer of underinsured motorist coverage, but the court of appeals reversed and imposed such cover-age by operation of law without determining the amount of coverage imposed. *Osterdyke v. State Farm Mut. Auto. Ins. Co.*, 371 N.W.2d 30 (Minn.App.1985) (*Osterdyke I*).

Osterdyke amended his complaint, claiming underinsured motorist coverage equal to his policy liability limits of $50,000 per person stacked for three policies, for a total of $150,000 in underinsured coverage. State Farm alleged the proper remedy for failure to offer underinsured coverage was to impose the statutory minimum required liability coverage, or $25,000. State Farm agreed such benefits could be stacked and offered Osterdyke $75,000 in settlement for his claim. Osterdyke accepted the $75,000 offer, reserving his claim that an additional $75,000 is due under the statute.

The district court ordered that Osterdyke was entitled to underinsured benefits of $150,000, an amount equal to his policy's residual liability limits stacked for each of Osterdyke's three vehicles, and entered judgment for Osterdyke for the remaining $75,000 above the amount of the settlement together with prejudgment interest. The court of appeals affirmed. *Osterdyke v. State Farm Mut. Auto. Ins. Co.*, 410 N.W. 2d 892 (Minn.App.1987) (*Osterdyke II*).

### II.

The issue before this court is: what is the proper amount of underinsured motorist coverage imposed by operation of law when an insurer fails to make a valid offer of underinsured motorist coverage pursuant to Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980), and the insured's residual liability coverage exceeds the minimum required by statute?

### III.

1. Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980) provides:

Subd. 6. **Mandatory offer; added coverage.** Reparation obligors *shall offer* the following optional coverages in addition to compulsory coverages:

\* \* \* \* \* \*

(e) *Underinsured motorist coverage offered in an amount at least equal to the insured's residual liability limits* and also at lower limits which the insured may select, whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle. The reparation obligor is subrogated to any amounts it pays and upon payment has an assignment of the judgment if any against the other person to the extent of the money it pays;
* * *.

(Emphasis supplied.)

In *Holman v. All Nation Ins. Co.*, 288 N.W.2d 244, 250 (Minn.1980), we held, where an insurer failed to establish that the mandatory offer of underinsured coverage was made, such coverage would be read into the contract by operation of law. Despite the statute's repeal in 1980, we have continued to provide the *Holman* remedy for injuries resulting from accidents prior to the statute's repeal. *See, e.g., Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849 (Minn.1982); *Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307 (Minn.1983). In this case we must determine the amount of underinsured coverage available when such coverage is imposed by operation of law under *Holman.*

2. State Farm argues the proper amount of underinsured coverage imposed under *Holman* is the statutory minimum amount of residual liability coverage required by Minn.Stat. § 65B.49, subd. 3 (1978), which is $25,000. State Farm relies on our holdings in *Beukhof v. State Farm Auto Ins. Co.*, 371 N.W.2d 538 (Minn.1985); *Dorn v. Liberty Mut. Fire Ins. Co.*, 401 N.W.2d 662 (Minn.1987); and *Jablonski v. Mut. Service Cas. Ins. Co.*, 408 N.W.2d 854 (Minn.1987).

In *Beukhof v. State Farm Auto. Ins. Co.*, 371 N.W.2d 538 (Minn.1985), an injured pedestrian brought a declaratory judgment action against his own insurer for underinsured motorist benefits after being struck by a motorcycle. We denied Beukhof's claim, holding an automobile must be involved in the accident in order for the injured person to recover underinsured benefits. *Id.* at 541. We went on to reject Beukhof's contention that underinsured benefits should be read into his policy even if he was not entitled to such benefits under the statute, because State Farm's standard underinsured motorist clause was broader than that mandated by statute. We stated:

> The court of appeals rejected this argument, and said that when provisions were implied by law, all that the insurance companies were required to offer under the now-repealed statute were the statutory minimum optional underinsured coverages. Therefore, it logically follows that as a remedy for the insurer's failure to make the mandatory offer, only the statutory minimum coverage should be imposed. *Beukhof,* 349 N.W.2d at 358.

> * * * * * *

> Because [Beukhof] would have bought under the policy, he argues, the policy provisions should govern. While this is a facially attractive argument, under closer scrutiny it appears in the instant case to force upon the insurance company something that is not present in the statute. If coverage is to be imposed by statute, the statute's provisions should govern, exclusive of the policy.

371 N.W.2d at 542. Recently, in *Jablonski v. Mut. Service Cas. Ins. Co.*, 408 N.W.2d 854, 857 (Minn.1987), we reaffirmed our holding in *Beukhof* and held that statutory language, rather than the policy language in the insurer's standard underinsured motorist clause, was the relevant guide when determining the scope of implied-by-law underinsured coverage.

3. State Farm's reliance on *Beukhof* and *Jablonski* is misplaced. Osterdyke relies on *Clark v. Allstate Ins. Co.*, 405 N.W.2d 463 (Minn.App.1987), and bases his claim upon the residual liability limits stated in

the policy he purchased from State Farm rather than the terms of a standard policy that was not offered by the insurer. Our concern in *Beukhof* and *Jablonski*, that the insurer not be required to provide coverage beyond the scope of the mandatory offer statute, is not present in the instant case. Osterdyke is not seeking to "force upon the insurance company something that is not present in the statute." *Beukhof*, 371 N.W.2d at 541; *Jablonski*, 408 N.W.2d at 857–58. *Dorn* is distinguishable, based on its peculiar factual setting.

The relevant guide when underinsured motorist coverage is imposed by operation of law is the language of the No–Fault Act. *See Beukhof*, 371 N.W.2d at 542. Minn. Stat. § 65B.49, subd. 6(e) (1978), provides that insurers must offer coverage "in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select." Because State Farm failed to make an offer of underinsured motorist coverage in an amount equal to the insured's residual liability limits, we imply coverage in that amount by operation of law. The clear statutory language requires no less.

We hold that the amount of underinsured coverage imposed by operation of law for failure to make a mandatory offer of such coverage under Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980), is the insured's residual liability limits.

The trial court and the court of appeals are affirmed.

COYNE, J., took no part in the consideration or decision of this case.